# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DAMPTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-01326 |
| | ) | |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORP., | ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Damptz claims he was discriminated against based on two disabilities and retaliated against twice over the course of more than seven years by his employer. His employer, Metra, has moved for summary judgment on all claims. Because Damptz has failed to demonstrate that several of his claims are timely, that he could continue to perform his job with reasonable accommodation, or that his employer had any retaliatory intent, the motion for summary judgment is granted in its entirety.

## BACKGROUND

### 1. Plaintiff's Non-compliance with Local Rule 56.1

Before the Court can give the necessary background on this case, it must consider Plaintiff's compliance with Local Rule 56.1(b)(3). This rule requires a "concise response to the movant's statement" that must include specific references to the record in the event of a dispute and a short statement of numbered paragraphs that similarly reference the relevant record. Failure to comply with this rule results in the movant's factual allegations being deemed admitted. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Purely argumentative denials or meaningless facts (that is, those that do not require denial of summary judgment) are inappropriate in a response. *Id*. "[L]engthy recitations of additional facts" in responses to the

movant's facts do not comply with L.R. 56.1(b)(3). *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 644 (7th Cir. 2008). The Court is entitled to require strict compliance with this rule. *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015).

Like the nonmovant in *Ciomber*, Plaintiff's response contained "several extremely long, argumentative paragraphs" in which he denied Metra's "proposed material facts and presented additional facts of his own." *Ciomber*, 527 F.3d at 644. For example, Plaintiff's response to Metra's fact ¶ 7 (that Plaintiff was a member of a collective bargaining unit and subject to the CBA) runs almost three pages even though it is "undisputed as to the language" (whatever that means). See Pl.'s Resp. to Def.'s Facts ("PSOF") ¶ 7, ECF No. 138. The response includes a discussion of 13 sections of the CBA, the job duties of Metra's Senior Director of EEO/Diversity Initiatives, and whether Damptz requested an accommodation. None of which, obviously, are relevant to whether Plaintiff was subject to the CBA or in a collective bargaining unit.

Similarly, in response to Metra's fact ¶ 12 (that by August 2010, Plaintiff was the only Machinist Helper at Metra and Metra was in dire need of Machinists), Plaintiff disputed only the wore "dire" but then went on to discuss how Plaintiff felt about losing his seniority, job tasks Plaintiff could perform despite his disability, and the impact of Plaintiff's loss of seniority. *See id.* at ¶ 12. Several of the facts alleged in this paragraph also lack citation to the record. Plaintiff's response to Metra's ¶ 13 similarly goes on for almost three pages and his response to ¶ 31 runs almost four pages. Plaintiff merely gave general denials and then referenced his rambling response to ¶ 7 in response to Metra's ¶ 25 and ¶ 26. Many of Plaintiff's responses include a citation to "**RDF-PAG _____**" (emphasis in original), which the Court takes to be an incomplete citation to an unknown and otherwise unidentified document. *See id.* at ¶¶ 36, 37, 38, 39, 47, 48.

Plaintiff's statement of additional facts also violates the Local Rule's requirement that such additional facts be confined to those "that require the denial of summary judgment." L.R. 56.1(b)(3)(c). For example, one of Plaintiff's additional facts is "Arthur Olsen is Manager Mechanical Department Olsen first met Damptz in 2001." Pl.'s Statement of Additional Facts ("PSAF") ¶ 9. However, Olsen is not mentioned anywhere in Plaintiff's brief other than a vague reference to him among a list of employees whose depositions Metra did not rely upon. *See* Pl.'s Resp. at 6 ("Including Neir's significant testimony about Damptz as a *qualified individual with a disability,* Metra excludes the testimony of its employees: Countess Cary, Vol. II; Dubin; David May; Kevin Neir; Olsen; and Noelle Rodriguez."). Similarly, ¶ 23 includes an irrelevant anecdote in which a supervisor once allegedly told Plaintiff to perform oral sex in exchange for a promotion. PSAF ¶ 23. Two of Plaintiff's "facts" simply state the content of attachments. *See id.* at ¶¶ 25-26.

The foregoing examples are merely illustrative but should suffice to explain why the Court chooses to strictly enforce L.R. 56.1 (which is essential to the Court's ability to determine whether disputes of material fact exist). Accordingly, the Court finds the following facts admitted.

### 2. Relevant Facts

Plaintiff Michael Damptz is an Illinois resident who has worked for many years for Metra (legally known as the Northeast Illinois Regional Commuter Railroad Corporation). *See* Def.'s Statement of Facts ("DSOF") ¶¶ 1, 6. Plaintiff was hired by Metra as a Coach Cleaner in May 1988 and was promoted to Machinist Helper in October 1988. *Id.* at ¶ 6. In August 2010, Metra needed Machinists, so Plaintiff was promoted to Machinist (receiving a higher rate of pay and a new seniority date) and the Machinist Helper position was eliminated. *Id.* at ¶¶ 12, 13, 22.

Machinists "inspect and repair running and dead trains, and rehab locomotives." *Id*. at ¶ 15. Essential duties include using equipment such as air tools, impact guns, hammers, sledges, adjustable height ladders, and scissor lifts. *Id*. at ¶ 16. According to the Department of Labor, Machinists must frequently lift five pounds and occasionally lift up to 50 pounds, as well as frequently grasping, ambulating, finely manipulating, and reaching out. *Id*. at ¶ 17. At Metra, Machinists inspect locomotive engines, which can require climbing a ladder on the side of the engine, lifting over 20 pounds, using vibrating tools, grasping tools and parts, and lifting and working above the shoulder level. *Id*. at ¶ 20.

Plaintiff was on medical leave from his job at Metra from June 2003 through June 23, 2004 and September 2005 to September 2008. DSOF ¶ 28. Plaintiff discovered he had hearing loss in 2007, which he blamed on his work at Metra. *Id*. at ¶ 30. In January 2009, Metra began requiring employees to wear hearing protection, but Plaintiff did not do so because he stated it interfered with his hearing aids. *Id*. at ¶¶ 31-32. Metra removed Plaintiff from work in February 2009 because he would not wear the hearing protection, but he was reinstated in June 2009, when he returned and agreed to wear hearing protection. *Id*. at ¶¶ 33-34. Also in June 2009, Plaintiff sued Metra under the Federal Employers' Liability Act for his hearing loss; that suit later settled. *Id*. at ¶ 35. At his deposition, Plaintiff stated he was satisfied with Metra's hearing protection and had not asked for different hearing protection or other protections. *Id*. at ¶ 36.

On July 5, 2013 (almost three years after being promoted to Machinist), Plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC") alleging that his seniority date had been reset when he became a Machinist in retaliation for requesting an accommodation for his hearing loss. *See* Compl. Ex. 1. He also submitted an internal "protest letter" to the Chief Mechanical Officer regarding his seniority date on April 18, 2014. DSOF

¶ 38. Plaintiff continued to work for Metra as a Machinist after filing the EEOC charge. He received a right to sue letter on this charge on November 14, 2014. *See* Compl. Ex. 2.

On July 9, 2013, Metra was notified that Plaintiff had injured his neck and shoulder and his physician stated he could not lift over 10 pounds, lift overhead or work overhead, be in a "vibratory environment," or work around fast-moving machinery. DSOF ¶ 40. As an accommodation, Plaintiff asked for a helper who would do the tasks he could not.[1] *Id*. at ¶ 41. Metra does not appear to have provided an assistant, and instead assigned him to light duty tasks such as wiping engine blocks. *Id*. at ¶ 42. Plaintiff did this until he went on medical leave for neck surgery on June 9, 2014. *Id*. The surgery medical leave spawned a currently pending state court case. *Id*.

Beginning in September 2013, Metra assigned a case manager from MedVoc, a rehabilitation consultant, to assist Plaintiff in finding a new job that would not interfere with his medical restrictions. DSOF ¶ 43. The case manager could help with securing a job at Metra or a different organization. *Id*. at ¶ 55. Plaintiff, however, considered the case manager a "nobody" and refused to return her calls or answer her letters. *Id*. at ¶¶ 52-57. One time, Plaintiff returned the call, only to hang up when the case manager identified herself as such. *Id*. at ¶ 57. The case manager's attempted outreach extended until at least February 18, 2016 without success. *See id.* at ¶ 62.

Meanwhile, Plaintiff sought the opinions of many doctors, many of whom issued restrictions that conflicted with the regular job duties of a Machinist, such as lifting, overhead work, and using vibratory tools. *See* DSOF ¶¶ 44, 45, 46, 47, 63, 67, 68. His doctor explicitly stated Plaintiff should not work until at least October 2014, and could return only with

---

[1] Metra admits that people returning from medical leave were frequently given a "helper" (presumably temporarily) so that "the employee could re-familiarize with the job." PSAF ¶ 11.

5

restrictions. *Id*. at ¶ 44. At least one doctor indicated that Plaintiff could return to work. *Id*. at ¶ 58. Plaintiff did in fact return to work on March 14, 2016. *Id*. at ¶ 65. When it appeared he had difficulty climbing ladders, a supervisor offered to construct a ramp. *Id*. at ¶ 66. On May 31, 2016, however, Plaintiff's doctor stated he could not climb stairs or walk on uneven ground (such as a ramp), in addition to lifting, grasping, and vibrating tool restrictions. *Id*. at ¶ 68.

On June 16, 2015, Plaintiff filed a second EEOC charge, alleging that beginning in September 2014, Metra had failed to accommodate his disability by refusing to allow him to work within his medical restrictions. *See* Compl. Ex. 3. He received a right to sue letter on this second charge on September 14, 2015. *See* Compl. Ex. 4. Plaintiff initially filed this suit on February 12, 2015 and filed a second amended complaint on November 4, 2015. Metra has moved for summary judgment as to all claims.

## DISCUSSION

Plaintiff brings six counts in his second amended complaint under the Americans with Disabilities Act ("ADA"). First, he claims disability discrimination based on his hearing loss, including the failure to provide him with hearing protection in 2009 and the loss of his seniority when he was promoted to Machinist in 2010. Second, he claims failure to accommodate his hearing loss (presumably through failure to provide adequate hearing protection). Third, he alleges retaliation for filing his FELA lawsuit in 2009, in the form of failing to accommodate his hearing loss, transferring him to less desirable locations due to the loss of his seniority, and forcing him to engage in irregular and demeaning jobs. Fourth, he charges Metra with disability discrimination based on his neck and shoulder injury and his placement on unpaid leave beginning in August 2014. Fifth, he claims failure to accommodate his neck and shoulder injury by refusing to allow him to return to work. And sixth, he alleges retaliation for demanding accommodation for his neck and shoulder injury and filing an EEOC complaint in June 2015 by

6

refusing to allow him to return to work. These complaints can most easily be broken into two groups – the hearing-related claims and the neck and shoulder-related claims.

**I. Hearing-Related Claims**

As an initial matter, it should be noted that Plaintiff's brief, filed by counsel, is so riddled with errors it is at times incomprehensible. The first two substantive paragraphs appear to have nothing to do with this case, as they reference a plaintiff named "Gunty" who suffered from depression and named Exelon as the defendant. *See* Pl.'s Resp. at 1-2, ECF No. 136. This text appears to relate to *Gunty v. Exelon Corporation,* No. 1:14-cv-04756, another case being handled by Plaintiff's counsel; this brief was evidently prepared using a brief in that case as a template but without bothering to proofread the document to ensure that references to the parties and issues in the template case had been deleted. The brief then lists, in bullet point form, three pages of summary of Metra's answer, without any explanation as to ***why*** these admissions and denials constitute disputes of material fact. The brief then discusses whether or not Plaintiff has a disability, something Metra did not dispute in its opening brief. After a completely citation-less discussion of the collective bargaining agreement ("CBA") and a facts section that also contains no citations to the record but does helpfully note "[need cite]" in several places, Plaintiff finally moves on to engage for the first time with one of Metra's arguments.

Metra's first argument is that all the hearing-related claims should be dismissed for failure to file a timely EEOC charge. "[A]n employee may sue under the ADEA or ADA only if he files a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (internal quotation marks omitted). Here, Plaintiff discovered his hearing loss in 2007 and had a dispute with Metra regarding proper hearing protection from January 2009 to June 2009,

7

when he satisfactorily received hearing protection. *See* DSOF ¶¶ 29-36. He lost his seniority when he became a Machinist in August 2010. *Id*. at ¶ 13. Plaintiff did not file his EEOC charge until August 2013, well outside the 300 day window for bringing claims for the failure to accommodate him by providing proper hearing protection in 2009 or losing his seniority in 2010. The Complaint alleges that the relevant retaliation was failing to provide adequate hearing accommodation, placing Plaintiff in less desirable locations "***as a result of losing his seniority***" and forcing Plaintiff to engage in "irregular and demeaning jobs." Compl. ¶ 48 (emphasis added). Clearly the first two actions were outside the relevant 300 day period, and the Court is unsure what "irregular and demeaning jobs" Plaintiff was assigned to during this period as the only job Plaintiff may have believed was demeaning was wiping down engine blocks, which occurred when he was placed on light duty as a result of his shoulder injury years after his protected activity regarding his hearing loss. *See* Def.'s Mem at 10.

Plaintiff appears to concede that Counts I, II, and III (all the hearing-related claims) are untimely. After explicitly stating (in a statement that appears to be taken directly from Metra's brief, although it is not marked as a quotation and Metra's brief is not cited) "Plaintiff failed to timely satisfy the statutory requirement and, accordingly, Count I, II, and III should be dismissed," Plaintiff's brief goes on to say "This appears to be correct as the court agrees there must be a specific event and there is no continuing of this." *See* Pl.'s Resp. at 13. Though it borders on gibberish, the Court understands this to conceded that the claims are untimely. But even if that was not the Plaintiff's intent, he has presented no argument that his claims are timely and the Court is not obligated to guess at what Plaintiff's arguments might have been.[2] *See*

---

[2] Finally, the Court notes that even if Plaintiff did mean to argue that the 2013 engine-wiping was in retaliation for his requests for 2009 requests for accommodation and lawsuit, the events are too far apart to raise a triable causation issue. Only a year between complaints and an

*Holman v. Indiana*, 211 F.3d 399, 405 (7th Cir. 2000). Therefore, the motion for summary judgment is granted as to Count I, II, and III.

## II. Neck and Shoulder-Related Claims

Plaintiff brings three claims surrounding his 2013 neck and shoulder injury. First, he alleges disability discrimination based on Metra's decision to place him on unpaid leave. Second, he claims failure to accommodate for failing to find him a job within Metra that would accommodate his medical restrictions. Third, he alleges he was retaliated against for filing his hearing loss charges, requesting an accommodation for his shoulder injury, and filing his second EEOC charge because Metra placed him on unpaid leave rather than allowing him to return to work.

### A. Discrimination and Failure to Accommodate

Metra's arguments as to the disability discrimination and failure to accommodate claim overlap. Both arguments essentially boil down to this: Metra allowed Plaintiff to do the work he could do until he could no longer perform the essential functions of his current job and he refused to work with Metra's caseworker to find a new position, none of which violates the ADA. From Plaintiff's injury in July 2013 until his surgery in June 2014, Plaintiff was assigned to light duty based on his medical restrictions, which included wiping engine blocks. DSOF ¶ 42. After the surgery, Plaintiff's doctor initially recommended he not work until October 2014, and when he returned to work he could not lift over 20 pounds, work around moving machinery, use vibratory tools, or do other tasks. *See id.* at ¶ 55. Plaintiff underwent numerous medical

---

adverse action is not sufficient to establish causation in a retaliation suit without more, *see Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014), and here the gap is multiple years. Plaintiff points to no evidence this task, even if it was demeaning, was connected in any way to Plaintiff's years-earlier hearing-related protected activities. Therefore, Metra is also entitled to summary judgment on Count III because Plaintiff has failed to adduce a causal connection between the protected activity and the alleged retaliation.

reevaluations, most of which indicated he had similar restrictions, until he was allowed to return to work on March 14, 2016. *See id.* at ¶ 65. When he returned, Plaintiff complained about difficulty climbing into train coaches, and the department offered to construct a ramp as an alternative means of doing so, but his work restrictions later included not walking on uneven ground and not climbing stairs (defeating the workaround proposed by Metra). *See id.* at ¶¶ 66-68. Metra then determined that Plaintiff could no longer perform necessary aspects of his job as a Machinist, apparently placing him on unpaid leave as a result. *See id.* at ¶ 69; Compl. ¶ 33. Throughout the course of his injury, Plaintiff had an assigned caseworker who was supposed to work with him to find a job (at Metra or elsewhere) that he could do, but he refused to work with (or even speak to) the caseworker.

To demonstrate disability discrimination or a failure to accommodate, a plaintiff must first show that "(1) he is disabled within the meaning of the ADA (2) he is qualified to perform the essential functions of the job either with or without reasonable accommodation and (3) he suffered from an adverse employment action because of his disability." *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950 (7th Cir. 2000). A plaintiff must show not only that he has the requisite skills and experience, but that he is also could still do the essential functions of the job with a reasonable accommodation (or without needing any such accommodation). *See Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013). Here, Plaintiff's own doctors indicated that he could not do certain essential job duties, such as lifting tools over 20 pounds, grasping tools, and working in a moving vibratory environment. Thus, Plaintiff would certainly need an accommodation, and the question becomes whether that accommodation is reasonable.

In his brief, Plaintiff identifies several potential accommodations: working in the KYD Air Room, performing visual inspections, and working with an apprentice who would handle

lifting. *See* Pl.'s Resp. at 18. In his own deposition, however, Plaintiff acknowledged that working in an air room requires grasping tools, which his medical restrictions do not allow him to do. *See* Def.'s Ex. K, 229:22-230:5. Thus, working in an air room is not a viable accommodation because Plaintiff would still be unable to do the job. Similarly, Plaintiff could only perform a visual inspection of trains in certain locations, because he could not climb up ladders or stairs, a task typically required for inspections. *See* DSOF ¶ 19. Inspections also include checking various fluid levels, break testing, and changing parts as needed, which require lifting over 20 pounds, using vibrating tools, and grasping tools. *See id.* at ¶ 20. Thus, Plaintiff could only do a small part of the inspection and would need someone else to do the rest. The job description of a Machinist describes the general duties as being "responsible for repair of running and dead trains, and rehabbing of locomotives." *See* Def.'s Ex. H. Plaintiff cannot lift, grasp, or use many of the tools necessary for such repairs.

"To have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation." *Majors v. GE*, 714 F.3d 527, 534 (7th Cir. 2013). It is the plaintiff's burden to show that an accommodation is reasonable on its face. *Id*. at 535. In *Majors*, the Seventh Circuit found that having another person perform an essential function of a job (in that case, having someone lift heavy objects over 20 pounds for her) was unreasonable as a matter of law. *Id*. In this case, Plaintiff's proposed accommodations, whether shifting the duty for making all repairs observed during inspections to another employee or having another employee lift heavy things and manipulate various tools during repairs, would result in another employee having to do many of the essential functions of Plaintiff's job. *See also Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 912 (7th Cir. 1996) ("We cannot agree that Cochrum would be performing the essential functions of his job with a helper."). Although

11

Plaintiff argues that "there are certain jobs underneath the banner of machinist that a person is assigned to," which the Court takes to mean that Machinists perform a variety of duties (including a few Plaintiff can do), Plaintiff does not argue that anyone employed by Metra does *only* those tasks or that only doing those tasks would even be a full-time job. Thus, Plaintiff has failed to meet his burden to show an accommodation that would allow him to do the essential functions of his job and is reasonable on his face.[3]

"Failure of the interactive process is not an independent basis for liability under the ADA." *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n.1 (7th Cir. 2014). Because Plaintiff has not demonstrated any reasonable accommodation from Metra that would have allowed him to perform the essential functions of his job, Metra's failed attempts to place him in a different position cannot be a basis for liability. Perhaps more importantly, Metra did attempt to engage in an interactive process to accommodate Plaintiff – giving him light duty before his surgery, offering to construct a ramp or stairs up to the engines, and then providing a case manager to help him seek other positions. Plaintiff refused to take part in the process by refusing to meet with the case manager. *Compare id.* at 1062 (employee returned all ADA-related paperwork, employer never engaged in process to find accommodation or contacted doctor to determine extent of disability). No reasonable juror could find on these facts that *Metra* failed to engage in an interactive process of determining accommodations, since Plaintiff simply refused to participate and then did not like the outcome. For these reasons, the Court grants the motion for summary judgment as to Counts IV and V, the neck and shoulder disability discrimination and failure to accommodate.

---

[3] Plaintiff does not argue that Metra's practice of assigning helpers to employees who return from medical leave to help "refamiliarize" such employees with the job is relevant to this issue, likely because putting someone with another employee long enough to retrain them is not the same as providing someone else to do the employee's job for an indefinite period of time.

### B. Retaliation

Finally, Plaintiff claims Metra retaliated against him by placing him on unpaid leave. *See* Compl. ¶ 66. Plaintiff claims he engaged in multiple types of protected activity: filing his discrimination EEOC charge and FELA lawsuit over his hearing loss, requesting accommodation for his shoulder injury, and filing his second EEOC charge. *See id*. at ¶ 65. Metra seems to misconstrue the complaint and believe that the alleged retaliatory action is being "forced to engage in irregular and demeaning jobs," but that is alleged to be a retaliatory action only in Count III (the hearing loss claim, which was dismissed for several reasons above). *Compare* Def.'s Mem. at 10 *with* Compl. ¶¶ 48. 64. Plaintiff's brief, which abruptly switches to the retaliation claim towards the end of a section on whether a *prima facie* case of discrimination has been established under the ADA, does not address this issue. Instead, he makes arguments only about whether timing can "negatively affect[] the complaint" and that wiping down engine blocks was in fact demeaning. *See* Pl.'s Resp. at 19-20.

To the extent that Plaintiff is in fact complaining of being assigned to wipe down engine blocks as a job that was too easy and therefore demeaning, *see id.* at 20, this was only one task among several that Plaintiff was assigned while on light duty after he injured his shoulder. *See* DSOF ¶ 42. Cleaning engine blocks does appear to be a regular part of Plaintiff's duties. For example, Plaintiff stated that he requested hearing protection because "I was going to be inside engine rooms all day cleaning engine blocks, and it's very loud with the engine running and the air popping."[4] *See* Damptz Dep. 89:19-24, Mar. 2, 2016, Def.'s Ex. B. A coworker referred to wiping down engine blocks as "light duty work" and denied that it was an undesirable job. *See* Dresden Dep. 103:10-104:1, Mar. 16, 2016, Def.'s Ex. P. A supervisor also testified that wiping

---

[4] This is a bit confusing, since Plaintiff later testified that he had "never seen it done before" when he was asked to wipe down engine blocks in 2013. *See* Demptz Dep. 121:14-16.

down engine blocks was "light duty." *See* Ratliff Dep. 65:16-19, Mar. 23, 2016, Def.'s Ex. R. Contrary to Plaintiff's assertion, there is no testimony in the record that wiping down engine blocks was anything other than a normal part of light duty work, given to Plaintiff to accommodate his medical restrictions.

This testimony supports two reasons why the engine block assignment cannot support a retaliation claim. First, there is no evidence that Plaintiff was put on engine duty in retaliation for protected activity. "[M]ere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Rather, all the testimony is that Plaintiff was placed on light duty as a result of his legitimate medical restrictions, restrictions which left him able to perform only a few duties, which happened to include wiping down engine blocks. At this stage, Plaintiff must present some evidence that the cause of his assignment was in fact retaliation. *See id.* at 643. Second, in order to state a retaliation claim, Plaintiff must demonstrate an adverse action. *See Sitar v. Ind. DOT*, 344 F.3d 720, 728 (7th Cir. 2003). "Not everything that makes an employee unhappy is an actionable adverse action." *Drake v. 3M*, 134 F.3d 878, 885 (7th Cir. 1998). An adverse action "must materially alter the terms and conditions of employment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005). Plaintiff has introduced no evidence suggesting the changes in his duties materially altered the terms or conditions of his employment. He does not introduce any evidence that he was paid or treated differently. He just performed the tasks he was medically able to do, rather than attempting those he could not. This does not constitute an adverse action.

Assuming that Plaintiff in fact meant to assert a retaliation claim based on Metra's refusal to allow him to return to work, that claim fails for many of the reasons stated for the previous counts. For a plaintiff to survive a retaliation claim, he must show: "(1) he engaged in statutorily protected activity; (2) he suffered a material adverse action; and (3) a causal link between the two." *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). Plaintiff has failed to present any evidence of (or argument regarding) a causal link between his unpaid leave and his hearing loss charge/lawsuit, his requests for accommodation, or his second EEOC charge. He has not identified any comparable employees who had similar restrictions (or behaved similarly towards their case managers) who were not placed on unpaid leave. More directly, the second EEOC charge, filed in June 2015, could not have caused the unpaid leave that started almost a year before in August 2014. *See* Compl. Ex. C. Suspicious timing does not typically create a causal link, and the 11 months between the first EEOC charge and the beginning on his unpaid leave is too great to generate a triable issue of fact on its own. *See, e.g., Porter v. City of Chicago*, 700 F.3d 944, 957-58 (7th Cir. 2012) (requests for accommodations 11-16 months prior to adverse action insufficiently suspicious). Moreover, the Plaintiff has introduced no evidence that his unpaid leave was suspicious at all, given his extensive work restrictions that did not allow him to do his job and his unwillingness to work with his case manager to find another job. No reasonable jury could conclude that Metra was somehow retaliating against him when there has been no evidence of any sort of retaliatory intent. The motion for summary judgment on Count VI must therefore be granted.

*    *    *

Plaintiff's lawyers have failed to adduce and present sufficient evidence to sustain a jury verdict in favor of their client on any of the claims he has asserted. Therefore, Metra's motion for summary judgment is granted and this case is dismissed.

Dated: September 5, 2017
 _____
 John J. Tharp, Jr.
 United States District Judge